## FIRST NAT. BANK *v.* LINDSAY *et al.*, Assessor.

*(Circuit Court, W. D. Louisiana.* February Term, 1891.)

1. TAXATION—CONSTITUTIONAL LAW—DISCRIMINATIONS.
    The article of the state constitution which provides that all property shall be assessed at a uniform rate is violated when it is shown that assessing officers assess in any considerable amount property at one-third or one-half, and other property at two-thirds, of its cash value. National banks, like any other tax-payer against whom discriminations are made, are entitled to the protection of article cited.

2. SAME—NATIONAL BANK SHARES.
    National bank shares are taxable, under section 5219, Rev. St. U. S., as other personal property, against the shareholders, provided "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens."

3. SAME.
    That statute permits the state to tax such shares under named conditions. Without such permission, a bank could not be taxed; but the state constitution, aside from such conditions, fully protects plaintiff from unequal taxation.

4. SAME—EXEMPTIONS.
    When section 5219 is substantially observed, such bank shares are not exempt from taxation, though the bulk of the bank's moneyed capital may be held in federal or state bonds; that is, the shares may be valued for taxation as they are rated or related to the whole of the bank's moneyed capital.

5. SAME—DISCRIMINATION—ASSESSMENT.
    When it is shown that the assessing officers fail, refuse, or omit substantially to subject the moneyed capital of individual citizens not exempted by state laws as far as practicable to uniform taxation, or when it is shown that, as a matter of fact, such officers assess only a few tax-payers on such capital, and those only for comparatively trifling amounts, leaving several hundred thousands of such values not subjected to taxation, then it follows that the enforcement of the state tax-laws operate practically so as to impose unequal and oppressively burthensome taxation on such banks as have their moneyed capital subjected to taxation, and said federal statute and article of the constitution are violated. *Held* that, under such facts as show a discrimination against such banks, the shares should not be assessed at their commercial value, but their value for taxation should be fixed, after taxing or deducting from the banks' moneyed capital all federal securities which may be included in the mass of the banks' moneyed capital. In fixing this value, the shares, after such reduction, should be rated or related to the remaining amount of capital.

6. SAME—ANNULLING ASSESSMENT.
    In applying section 27, under which national bank shares are taxed, and section 28 of the revenue act of 1888, under which moneyed capital in the hands of individual citizens is taxed, it appears that an inequality and discrimination is particularly wrought out against the complaining bank, and plaintiff is entitled to adequate relief. *Held*, if it be shown that the assessing officers wrongfully, or through gross negligence, failed, refused, or omitted to subject moneyed capital, known by such officers

to be in the hands of individual citizens of the taxing district in any large sum,— say several hundred thousand dollars of such values,—or for any such cause, they, as a matter of fact, subjected only a trifling amount of such values to taxation, the plaintiff is entitled to relief to the extent of having the whole assessment as against the bank annulled.

(*Syllabus by the Court.*)

At Law.

A. H. *Leonard*, for plaintiff.

A. D. *Land* and J. H. *Shepherd*, for defendants.

BOARMAN, J., (*charging jury.*) The plaintiff, a national bank, sues to have the assessment and taxation made by defendants against the bank shares entirely annulled or adequately reduced. The moneyed capital of the bank is $200,000, divided into 2,000 shares, at $100 a share. Said capital is shown to be made up largely of United States and state bonds, and other rights and credits. Besides, the bank, for itself, owns some property, which, if taxable, should be listed and assessed against the bank. As the case presents itself to us, after hearing the pleadings and evidence, it may be well, for the purpose of analysis and consideration of the suit, to divide our consideration of the issuable facts under two headings or questions: (1) The bank complains that, considering the shares as the law would consider any other personal property of the shareholders, the valuation put upon the shares for taxation imposes a greater, an unequal, and more burthensome taxation than is in fact borne throughout the parish and state by others owning personal and real property. That said shares are assessed at two-thirds of their cash commercial value, when, as a matter of fact, other property listed for taxation is assessed at not more than one-third or one-half of such value. Further, the tax is unequal and oppressively burthensome, because a large sum, amounting to several hundred thousand dollars, consisting of moneyed capital, such as rights, credits, open accounts, money loaned at interest, mortgages, was not listed for taxation in the parish at all, because of the willful omission or gross negligence of the assessing officers. (2) That the tax-laws of the state in their application, enforcement, and effect, and the acts of omission and commission on the part of the police jury and assessor, acting under their official authority, violates, to the injury of plaintiffs, the constitution of the state, as well as the conditions under which congress permitted the states to tax the shares of national banks, in this: that, under the state laws, and their enforcement by the assessing officers, the assessment and taxation of such shares is at a greater rate of taxation than the tax assessed and collected upon the moneyed capital in the hands of corporations or private banks, whose moneyed capital is not represented by shares, or in the hands of individuals; that the state, in exercising the permission given by congress, discriminates against national bank shares, in this: that the revenue act of 1888 in its application and enforcement necessarily subjects to one rule of taxation all moneyed capital not held in shares by corporations, private banks, and the like capital in the hands of individuals, and the moneyed capital

of national banks which is held in shares to another and different rule or process of taxation. The discrimination complained of results from the application by the assessing officers of the two rules laid down in the state laws.

Now, taking up the first question, you will remember the bank officials in July, 1889, went before the police jury, then sitting, under state laws, as a board to review and adjust the tax-lists and assessments for that year, to have the inequalities complained of corrected. The officials failed to get the relief sought. So this suit, particularly as to the inequality as to valuation of shares suggested, comes to you as if on appeal from the refusal of the reviewing board to make the reductions asked by the bank officers. Then, under this view, you should, after hearing the evidence, do what you believe that board was authorized to do, and should have done, under the facts and law in the premises. On this issue plaintiffs, in addition to the large number of witnesses whom he examined, read to you as evidence the following resolution, passed by the police jury at or about the time plaintiff went before that board for relief: "That the property in the parish be assessed at two-thirds of its cash value, unless deemed advisable by the jury to assess in some instances at its full cash value." This resolution shows the official *animus* of the assessing officers. Aside from showing the *animus* of the parochial board, to whose supervision the law intrusts the listing and taxation of all property in the parish and city of Shreveport, the resolution may be valuable to you in supplementing other evidence, offered by plaintiffs, as to whether, as a matter of fact, the assessing officers endeavored, in good faith, to make a uniform assessment, and as to whether the assessment was in fact made uniformly, upon a basis of one-third, one-half, or two-thirds of the cash value of listed property. These matters are put at issue in the pleadings and evidence. The plaintiffs contended that the weight of evidence makes up proof that the assessing officers acted arbitrarily, as the resolution suggested their purpose so to do, in making assessments. He contended that those officials made great and oppressive inequalities in their assessments, and that, as a rule, much, if not the bulk, of the taxable property in the parish was not assessed for more than one-third or one-half of its cash value. The defendants' counsel contended that the assessment was not arbitrarily made, that no property was assessed for its cash value, and that the assessments were uniformly, as far as practicable in the nature of things, made on the basis of two-thirds cash value. These contentions of counsel were elaborately argued. You must, in determining this issue for yourselves, keep in mind the state constitution, which provides that all property shall be assessed at a uniform rate.

Having considered so much of the first question, it may be best to take up the matter as to the willful omission or gross negligence of the assessing officers in not listing and subjecting to taxation several hundred thousand dollars of moneyed capital, consisting of rights, credits, notes, money loaned at interest, etc., when we have discussed the second complaint.

In the second complaint the bank presents a more difficult question of law and fact. In this complaint the bank says the tax-law of 1888 and its enforcement by the parish officers violates the conditions under which congress permits the state to tax its shares. Section 5219, Rev. St. U. S., under which the state is alone authorized to tax such shares, reads as follows:

"* * * The stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares therein. Said shares shall be included in the personal property of such shareholders, * * * but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens in the state."

Except for this statute, the state could not tax such bank shares. The revenue act of 1888 defines taxable property to be, among other things, bank shares. Sections 27 and 28 of that act are as follows:

"Be it further enacted," etc., "that no assessment shall hereafter be made under that name, as the capital stock of any national bank, state bank, * * * banking association, or of any corporation, company, firm, or association, whose capital stock is represented by shares; but the actual shares shall be assessed to the shareholders who appear as such on the books, regardless of any transfer not registered or entered upon the books, and it shall be the duty of the president or other officer to furnish to the assessor a complete list of those who are borne upon the books as shareholders; and all taxes so assessed should be paid by the bank, company, firm, association, or corporation which shall be entitled to collect the amount from the shareholders or their transferees."

"Sec. 28. That no assessment shall be made of capital employed in trade under the name, as heretofore, but merchandise or other property taxable under section one of this act, owned by any person, or association, firm, or company, whose capital stock is not represented by shares, shall be assessed to the person, firm, association, or company having possession of the same, either in their name, or as agent for some other named person or persons."

In considering the federal laws, you will see that congress says to the state, substantially: You shall not tax, in any direct way, United States bonds held by any one, but you may, under section 5219, tax the shares of stockholders in national banks, even though it should appear that the bank, or any part of its moneyed capital, is made up of such bonds: provided, in the operation of your tax-laws the said shares are not made to bear a greater rate of taxation than is practically paid by or imposed upon other moneyed capital owned by your individual citizens.

In addition to this specific condition, it is, of course, implied that such taxation on national banks must be characterized by such equality and uniformity as is required by the state constitution. You will see that the test fixed in section 5219 is that the assessment and taxation, practically, of national bank shares shall not result in causing such shareholders to pay tax at a greater rate than they or any one else, as individual citizens, have to pay upon moneyed capital. To apply this test we will have to see what the practical effect or result is when sections 27 and 28 are followed and enforced by the taxing officers of the parish. If such a result shows that a discrimination is wrought out, injuriously against such shareholders, then the conditions specifically stated or implied in section 5219 are violated, and plaintiffs are entitled to relief.

You will observe that the state taxes the shares of national banks under provisions of section 27, and, under section 28, taxes moneyed capital of private banks or corporations, in which the stock is not divided into shares, and the moneyed capital of individuals. Defendants' counsel contends that section 27 directs the assessing officers to assess shares in national banks at their cash or market value, and that in fixing their value for taxation no deduction from the banks' moneyed capital should be allowed for United States or state bonds appearing in the bulk of such capital. This contention, it is said, is supported by the opinion of the state supreme court in *First Nat. Bank* v. *Board of Reviewers, etc.*, 41 La. Ann. 181, 5 South. Rep. 408. Of course, the assessing officers, in enforcing section 27, would be governed by that opinion. Section 28 directs the assessor, in assessing moneyed capital, which as a rule in this parish seems to consist in rights, credits, notes, money loaned on interest, United States and state bonds, etc., held by individuals, not to assess aggregate amounts invested in business, but to list and assess for taxation each item of property *seriatim*. Under section 27 the assessing officers assess each share held by individuals in a national bank, and in arriving at its cash value they are, it is contended, directed to consider the shares as they are related to the bank's aggregate moneyed capital; that is, practically, they are directed to assess it at its market value. It is contended, too, that in fixing the assessable value of such shares the assessor is forbidden to deduct or take from the bank's moneyed capital such federal or state bonds as he may find in such capital. It is contended that such a deduction is denied to the bank, because such bonds, when held in the bulk of a national bank's moneyed capital, do not come under the list of property exempted in the state law from taxation; and therefore such bonds, when entering into the moneyed capital of a national bank, must be considered in the basis for valuation when the assessor fixes the value of such shares for taxation. Under section 28 the assessing officer does not assess the aggregate moneyed capital which he may find held by a private bank, corporation, or individual citizen, but he is directed by the law to take up, list, and assess one item after another, *seriatim*, of property or moneyed capital in the hands of individual citizens, and the result of following this section must be that he would, under the general laws, federal and state, leave out of his listing, as he would come to them, such United States and state bonds as he might find among the taxable moneyed capital of an individual. In addition to leaving such bonds out, he would of course omit from his listing the exempted property named in the state law. So it seems, that, under section 27, the value for taxing such shares is arrived at, practically, by taking their market value; that is, the assessor reaches the value of the shares by rating and relating them to the whole of the moneyed capital of the bank, just as a purchaser would in open market, even though, as a fact, such capital is made up largely, if not wholly, in United States and state bonds. Such would be, substantially, the effect of enforcing section 27, while in following the rule in section 28 for assessing rights, credits, etc., and such bonds as make up the moneyed

capital of individuals, the assessor would, in listing such capital, leave out or off his listing, as he came to them *seriatim*, federal and state bonds.

It is not contended that the assessing officers, when they, in enforcing the state tax-laws, practically comply with the conditions named in section 5219, are not authorized to assess such shares at their commercial value, even should it appear that the bank's capital is held largely in federal and state bonds; and it must be considered as equally clear that the assessor, acting under section 28, listing moneyed capital of individual citizens, would be compelled, under federal and state laws, to leave out of his listing such federal and state bonds as he might find in assessing *seriatim* the moneyed capital of such individuals.

If such securities, when found, making up a bank's moneyed capital, are by operation of the law, when the assessor is fixing the value of such shares, included in the mass of the bank's moneyed capital, and it is shown that the assessor, engaged in listing *seriatim* the items of an individual's moneyed capital in which such bonds appeared, would, under section 28, leave out of his listing such bonds as he came to them, then an inequality in the rate of taxation is shown, and the conditions of section 5219 are violated, as well as the provisions of the constitution forbidding unequal taxation.

In the case of *Bank* v. *Parker*, 41 Fed. Rep. 402, it was held by Judges PARDEE and BILLINGS of this circuit, a case very similar to this one, that the effect of enforcing sections 27 and 28 of the revenue act of 1888 would operate a discrimination against a national bank holding United States bonds in its moneyed capital, in this:   That "under the state statutes of 1888 all individuals and partnerships, even those engaged in the business of banking, and all moneyed capital in the hands of individual citizens, may have the exemption which the state denies to national banks."   Further on the court says:

"It is conceded by complainant that federal bonds, held by a national bank, are taxable as a part of its capital, and are not to be deducted in fixing the assessable value of its shares, unless they would be in the case of other moneyed capital employed by individual citizens.   *   *   *   The fatal objection is not that the federal or state securities are not deducted, but that they are not deducted from the shares, while they are deducted from other moneyed capital. The inequality, not simply the omission of the deduction, is the ground of complaint."

Finally, upon the second complaint, I charge you that the practical effect of enforcing sections 27 and 28 violates section 5219, Rev. St. U. S., and a discrimination results to the bank, and in this case plaintiff, in the interest of its shareholders, is entitled to adequate relief.   In ascertaining the value of the shares, you should deduct from the moneyed capital of the bank all federal and state bonds, and all property assessable in law to the bank itself, held at the time of the assessment of 1889. Then, after such deductions are made, you will say for what amount the shares ought to have been assessed for taxation.   In determining the assessable value of the shares you will not be controlled by what the evidence shows to be their market value, but you will rate or assess the

shares as you may believe them to be worth, relatively, to the bank's capital, after the deductions suggested by the court have been made. Having ascertained from the evidence, on the first question, the basis for assessment which was, as a matter of fact, uniformly adopted by the assessor,—that is, whether he assessed on the basis of one-third, one-half, or two-thirds of the cash value of the listed property,—you will, as far as practicable, in fixing the value of the shares for taxation, adopt the basis upon which you find he, as a rule, assessed taxable property.

Passing to the contention of the plaintiff's counsel that the assessment, as against the bank, should be entirely annulled, it is argued that the assessor, with the consent and knowledge of the police jury, willfully, or through gross culpable negligence, refused and failed to list for taxation several hundred thousand dollars' worth of moneyed capital of individuals, private banks, and corporations, consisting of such taxable values as rights, credits, bills receivable, notes, money loaned, bank deposits, mortgages, etc., in the parish and city; that gross inequalities and such culpable omissions are shown in other parishes; that such willful refusal or omission on the part of the parish and state officials resulted in a gross and culpable inequality in the listing and assessment of taxable property throughout the state, and relief to the extent of annulling the assessment should be given to any tax-payer complaining in court. Upon this point you will consider the resolution of the police jury, you will call to mind the testimony of 30 or more tax-payers, representing in themselves several hundred thousand dollars of taxable property, who testified, at the instance of the plaintiff, as to the extent of inequality existing in the listing and assessment of property in this and other parishes. You will remember that among the witnesses were three members of the police jury in 1889, when the bank's assessment was made. Two of those witnesses, Mr. Cole and Mr. Foster, said that they, each of them, at that time, held mortgage notes, rights, and credits, and had several thousand dollars of their moneyed capital loaned at interest, but did not give in any rights, credits, etc., to the assessor, because others were not required or made to comply with the law. Mr. Cole said it was understood among the members of the police jury that such moneyed capital of individuals should not be bothered with by the assessor. Mr. Foster said that a business man, Stephens, in Shreveport, gave into the assessor $35,000 of such capital, and, as only a trifling amount of such capital had been listed for taxation, the police jury directed that Stephens should not be taxed on his $35,000. Zeigler, a witness, said he gave in $7,000 of such capital, but the assessor did not list it. Lindsay, the assessor, said that he found it impracticable to list such moneyed capital in the parish, and, though it was his duty to list such capital, he, after making some effort to do so, gave up trying, and, as a matter of fact, only a trifling amount was secured for assessment in 1889, as was the case in previous years. On cross-examination he said his effort to list such property consisted in his asking two tax-payers, whom he named, to give in such property. They denied having such capital, and he abandoned further effort to subject such property to taxation.

v.45f.no.9—40

I run over this evidence, recalling it to you, because it makes up, substantially, all of the direct testimony showing the *animus* which characterized the failure of the officials, complained of by plaintiff. In answer to this contention defendants' counsel does not deny that a very large amount of such moneyed capital in the hands of private banks and corporations, in which stock is not held in shares, and in the hands of individuals, was not listed for taxation, and but a trifling amount of such capital in the hands of individuals was put on the tax-rolls. But he contends that the weight of the evidence shows that the officials did their duty in the premises, and that, as a matter of fact, it was impracticable and impossible to run down and unearth such property for tax-ation. Without passing in any way on the facts upon this point, it seems that the laws of the state are abundantly full of remedial process by which all such moneyed capital could have been readily unearthed and subjected uniformly to taxation. There seems to be nothing wanting in the remedial process of the laws under which the assessing officers should act. If you found such a large sum was not listed for taxation, you must charge the failure to the officials, and not to the inadequacy of the law. The law requires all the property mentioned in section 1 to be listed for taxation. Of course, much of it, in the nature of things, will escape the assessor's vigilance. He must be held to a reasonable discharge of his duties in complying with the law, which requires that all property shall be assessed at a uniform rate.

I charge you, if you find that it was impracticable to list and assess for taxation the large sum, or any such sum of like magnitude, as was shown by the plaintiff's undisputed evidence to have been omitted by the assessing officers, and you find that, as a matter of fact, it was practicable, with the best efforts of such officers, aided by the law, to list only a trifling amount of such capital as was in fact subjected to taxation in 1889, then the listing and assessment was unequal, and wanting in the required uniformity, and in its discriminations more burdensome to some tax-payers than to other tax-payers; that, under such circumstances, it was especially burdensome to the very few tax-payers, among whom was the plaintiff bank, against whom taxation upon moneyed capital was actually imposed and collected. If you find, as a matter of fact, from any cause, whether by neglect or refusal of the assessing officers, or from other causes, such a large sum was not, as a matter of fact, listed for taxation in the parish, and that only a few persons were taxed on their moneyed capital, and they only for comparatively trifling amounts, and that the great bulk of such capital in the hands of individuals was not taxed at all, then you are warranted in concluding that the conditions in section 5219, as well as the provisions in the state constitutions, to enforce the observance of equality and uniformity in the processes of taxing all property in the state, have been violated and disregarded as to plaintiff, and you are authorized to give relief to the bank in such a way as will protect the shareholders from paying a greater rate of taxation than is imposed on individual citizens.

Upon the matter of reducing the assessments, so as to give adequate

relief, you will be able, likely, to only approximately do so; but your verdict should be responsive to whatever you may believe to be, substantially, remedial in the premises.

In addition to what we have been considering, the plaintiff says an oppressive and wanton discrimination was made against the shareholders, in this: That the assessing officers have willfully, wantonly, or through gross culpable negligence, refused, failed, and omitted to subject to taxation a large amount, nearly if not more than $1,000,000 of rights, credits, notes, mortgages, etc., and other moneyed capital, which was known by such officers to be in the hands of individual citizens of the parish and city. Upon this matter I charge you that it is not disputed by defendants that a large sum of such moneyed capital was not listed for taxation, and that, as a matter of fact, only a trifling amount of such taxable property was subjected to taxation; and, if the evidence sustains the allegation of such willful refusal or gross culpable negligence against the assessing officers, you are authorized to relieve plaintiffs to the extent of annulling the whole assessment as to the bank.

Verdict for plaintiffs.